**Chat PHAV, Plaintiff, Appellee,**

v.

**TRUEBLOOD, INC.,**
**Defendant, Appellant.**

**No. 90–1177.**

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1990.

Decided Sept. 28, 1990.

D. Alice Olsen, with whom Lee Stephen MacPhee, Thomas M. Elcock and Morrison, Mahoney and Miller were on brief, for appellant.

Robert J. Doyle, with whom Kehoe, Doyle, Playter and Novick, Edward J. Santella, Kathleen M. Curley and the Office of Edward J. Santella were on brief, for appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiff Chat Phav lost the ends of two fingers in an accident at his place of work while operating a machine manufactured by defendant Trueblood, Inc. Phav, a Massachusetts resident, sued Trueblood, an Ohio corporation, in federal district court on the basis of diversity, claiming negligence and breach of implied warranty of merchantability under Massachusetts law.[1]

At trial, the judge submitted the case to the jury on special questions. Five categories of questions were submitted to the jury: 1. Negligence (Design and Manufacture); 2. Negligence (Warning and Instructions); 3. Contributory Negligence; 4. Breach of Warranty; and 5. Damages. The jury found that the defendant was negligent in its design or manufacture of the machine and in its failure to provide adequate warnings or instructions about its use. It also found that the conduct of the plaintiff's employer, either standing alone or in combination with any negligence of the plaintiff, was the "sole proximate cause" of plaintiff's injuries. In answer to the breach of warranty questions, the jury found that the defendant breached its warranty to Phav and that the breach "proximately caused" his injuries. It awarded plaintiff $5,000 in damages, which was the exact amount of plaintiff's medical expenses as stipulated by the parties.

Plaintiff sought a new trial on the issue of damages, which defendant opposed. The district court allowed plaintiff's motion, ruling as follows:

> The jury's parsimonious award of damages was outside the universe of possible awards once the jury had found the evidence sufficient to support liability; there being no indication of a compromise verdict, see generally *Mekdeci v. Merrell Nat. Labs.*, 711 F.2d 1510, 1513–1515 (11th Cir.1983), the new trial will be limited to the question of damages.

---

[1] In Massachusetts, breach of implied warranty of merchantability is akin to strict product liability as expressed in the Restatement (Second) of Torts § 402A (1965). *Allen v. Chance*, 873 F.2d 465, 466 n. 2 (1st Cir.1989). *See Colter v. Barber–Greene Co.*, 403 Mass. 50, 525 N.E.2d 1305, 1313 (1988); *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273 (1984); *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 446 N.E.2d 1033 (1983); *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964 (1978).

After retrial on damages, a second jury awarded plaintiff $370,000.

Defendant appeals on the ground that the district court abused its discretion in granting a new trial on damages alone. It contends that the $5,000 award was not "outside the universe of possible awards" and therefore did not constitute grounds for a new trial. Alternatively, it argues that even if the district court could have found the $5,000 award inadequate, it should have ordered a new trial on liability as well as damages because there were sufficient indicia that the award resulted from a compromise verdict on liability. One of these indicia, defendant contends, was confusion of the jury as to the issue of causation generated by the district court's formulation of the special questions.

## I.

■ A verdict may be set aside and new trial ordered "when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." *Torres–Troche v. Municipality of Yauco*, 873 F.2d 499 (1st Cir.1989) (*quoting Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982)). Although the district court's discretion in disposing of a motion for new trial is not unlimited, its decision will not be disturbed on appeal absent clear abuse of that discretion. *Velez VDA. De Perez v. Hospital del Maestro*, 910 F.2d 1004, 1008 (1st Cir.1990); *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1334 (1st Cir.1988). An inadequate damages award may constitute sufficient reason for a new trial. *Mekdeci v. Merrell Nat'l Labs.*, 711 F.2d 1510, 1513 (11th Cir. 1983).

### Plaintiff's Damages Evidence

Plaintiff introduced evidence on three types of damages: medical expenses, pain and suffering, and lost earning capacity.

As to the first, the parties stipulated that plaintiff's medical expenses were $5,000.

As to the second, plaintiff sought to show pain and suffering through his own testimony, the testimony of his physician, and that of a friend. Through a translator, Phav testified that he immigrated to the United States from Cambodia in 1981, and, at the time of his accident was working at Cable Systems, Inc. in Everett, Massachusetts. His job was to operate a machine that molded plastic plugs onto computer cables. On the day of the accident, January 7, 1986, one of the dieheads into which he was inserting a cable became stuck. As he attempted to free the cable, the diehead opened upward very quickly, crushing the tips of his left long and index fingers. Phav yelled for help and with his supervisor's assistance extricated his hand from the machine. He felt pain in his arm and saw blood coming out of it. He went to a hospital and lost consciousness at some point. He was hospitalized for three days.

Dr. Richard Peinert, a plastic surgeon into whose care Phav came a month after the accident, testified that some two years later the stubs of Phav's fingers were still acutely sensitive to touch and cold temperatures, and bent backward in what is called a "swan's neck deformity."

Phav also testified that before the accident, he engaged in recreational basketball and volleyball and played the guitar and a traditional Cambodian musical instrument, but that since injuring his fingers he could no longer play these sports or instruments. A friend corroborated this testimony. Phav testified further that he considered the injury to be a social stigma because the deformity and his inability to work made him undesirable to women.

As to the third type of damages, lost earning capacity, plaintiff testified that he was out of work for almost two years following his accident. When he did obtain a job he was paid more per hour than he had been at Cable Systems ($6.25 compared to $5.25), but was at times unable to work because of pain in his fingers. A vocational expert testified on Phav's behalf that "if [Phav] is able to return to work of any kind it will be a direct entry [level position], [at] unskilled, minimum wage or slightly above, and he'll be locked in at that level."

### Defendant's Damages Evidence

Trueblood introduced evidence that tended to undermine plaintiff's credibility in general and his claim of pain and suffering and lost earning capacity in particular. Phav testified that he understood only "a little bit of English" despite having lived in the United States for eight years and having taken a course in English as a second language. On cross-examination, Phav admitted that at the time of his accident he understood English sufficiently to order a meal in a restaurant, cash a check at a bank, understand television, comprehend street signs and read the newspaper. Phav testified that he was never warned not to place his hand in the molding machine; his supervisor and another Cable Systems employee testified that they had warned him not to do so. According to defendant, these inconsistencies undermined plaintiff's general credibility, giving the jury a basis for disbelieving his evidence concerning damages.

As to plaintiff's pain and suffering, Trueblood could not dispute that plaintiff suffered a crushing amputation of the tips of two fingers. However, as plaintiff admits in his brief, his evidence on pain and suffering was not overwhelming. For example, although Phav's doctor described Phav as subject to continuing painful sensitivity in his finger stubs, Phav's own description of his pain was minimal. He stated, through the court translator, that what he felt was a "quick pulse" in his arm.

As to lost earning capacity, Trueblood produced employment records showing Phav had worked for a contracting company in the summer of 1987; plaintiff testified he did not recall that job. Trueblood also introduced evidence showing that in two jobs Phav had held after his accident he made more per hour than he had at Cable Systems.

█ The district court found that the jury's damage award of $5,000 was a "parsimonious award outside the universe of possible awards once the jury had found sufficient evidence to support liability." Although a trial judge "should not act merely as a '13th juror,' " *Borras v. Sea–*Land Service, Inc.*, 586 F.2d 881, 887 (1st Cir.1978), we must keep in mind that he or she "has had the benefit of hearing the evidence and observing the demeanor of the witnesses." *Clark v. Taylor*, 710 F.2d 4, 13 (1st Cir.1983). Based on our review of the record, we hold that the court did not abuse its discretion in finding that the award was inadequate. We turn now to defendant's claim that if a new trial was in order, it should have been on all of the issues because the damages award, compensating plaintiff only for his medical expenses, was the result of a compromise on liability.

### II.

█ Rule 59(a) of the Federal Rules of Civil Procedure provides that a new trial may be granted "on all or part of the issues." Where a verdict is set aside because of an inadequate damages award, retrial of all the issues is required "if the verdict 'could only have been a sympathy or compromise verdict.' " *Spell v. McDaniel*, 824 F.2d 1380, 1400 (4th Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (quoting *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 511 F.2d 839, 846 (4th Cir.1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976)). " '[B]ut where there is no substantial indication that the liability and damages issues are inextricably interwoven ... a second trial limited to damages is entirely proper.' " *Id.* *See also Mekdeci*, 711 F.2d at 1513 (11th Cir.1983) (retrial limited to damages not appropriate where there are indications jury may have rendered compromise verdict); *Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984) (where there is a compromise finding on liability, a separate trial on damages alone will not suffice). *See generally* C. Wright and A. Miller, *Federal Practice and Procedure: Civil*, § 2814 (1973 and Supp.1990).

The Eleventh Circuit has stated a clear and concise definition of a compromise verdict:

A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages. *See Freight Terminals, Inc. v. Ryder System, Inc.*, 461 F.2d 1046, 1053 (5th Cir.1972). However, an insufficient damages verdict, standing alone, does not necessarily indicate a compromise. *See, e.g., Hadra v. Herman Blum Consulting Engineers*, 632 F.2d 1242, 1246 (5th Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981). *Parker v. Wideman*, 380 F.2d 433, 437 (5th Cir.1967). Ordinarily there must be other evidence demonstrating that the deficient monetary award resulted from an impermissible compromise.

*Mekdeci*, 711 F.2d at 1513.

In addition to inadequate damages, the telltale signs of a compromise verdict are a close question of liability and an odd chronology of jury deliberations. *See, e.g., Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1446 (10th Cir.1988) (inadequate damages, close liability and odd chronology of jury deliberations including a deadlock); *Mekdeci*, 711 F.2d at 1514 (low damages, close liability and clear indication from jury of its indecision and a deadlock). *Compare Spell*, 824 F.2d at 1384–85 (grossly inadequate damages but no other clear indication); *Burger King Corp.*, 710 F.2d at 1487 (inadequate damages but no other indicia). *See also Wagenmann v. Adams*, 829 F.2d 196 (1st Cir.1987) (extremely high damages award, fairly strong liability evidence, no reason to believe jury disregarded instructions of court).

■ Here, the low damages award was the only sign of a compromise verdict. Plaintiff's evidence on strict liability (breach of implied warranty) was strong. It showed that without a plastic guard that was designed to be attached in front of the machine's moving parts, the machine posed extreme danger because the operator's hands could be pinched on the upstroke of the top part of the mold. There was no guard on the machine at the time of Phav's accident. None of the witnesses called by either party could recall ever having seen a guard on the machine prior to Phav's accident. Nor did the machine's manual have a diagram of a guard or instructions for putting one on the machine. Moreover, there was testimony that as designed, the guard could be removed without any tools and that the safety switches meant to prevent operation without the guard were easily bypassed. The only warning sign mentioning guards that an operator could see when running the machine was attached to the front of the guard. Hence, when the guard was missing, the sign was also missing. In addition, plaintiff's engineering expert suggested design alternatives such as one in which the operator's hands had to be on the controls when the mold was in motion, or having the mold stop rather than rise up when the operator's hands were removed from the controls. Defendant's expert contradicted plaintiff's expert in some respects, but not to the extent of undermining defendant's liability.

There was no sign of difficulty in the jury proceedings. The jury left for deliberations at 12:15 p.m. and had lunch at 1:00. At 2:20 p.m., the jury did ask the court whether "we have to have a unanimous— have a verdict for each question?" and if the court would "repeat instructions of the law with regard to question 1.A." At the request of counsel, the judge told the jurors they did have to be unanimous in their response to each question, and then repeated its instruction on negligence in the context of the design or manufacture of a product. At 5 p.m. on the same day the jury returned its verdict. There is nothing in the deliberation process indicating a compromise verdict.

Defendant argues that the jury's answers to the questions submitted to it demonstrate that it was confused as to liability. In answer to the negligence questions, the jury found that defendant was negligent in the design or manufacture of the machine and in the failure to provide adequate warnings or instructions about its use. It also found that the conduct of plaintiff's employer "either standing alone or combined with any negligence of the plaintiff

was the sole proximate cause of Phav's injuries." In its answers to the breach of warranty questions the jury unequivocally found defendant liable.

■ We do not know whether the jury was confused. But we do know that defendant has waived its right to assert that the jury questions were a source of any confusion. In its appellate brief defendant argued that the district court erred in formulating the special questions, implying that we should reverse on that ground alone. At oral argument, defendant glossed over this issue, focussing instead on its claim that the jury's answers to the special questions indicated a compromise verdict. This claim, if accepted, would require reversal and a retrial on all the issues.

As plaintiff points out, there is an understandable reason why defendant switched from a legal attack on the jury questions to an attempt to use them as evidence of confusion: the jury questions issue was not preserved below and is not properly before us. Fed.R.Civ.P. 51 states: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." This court has consistently construed Rule 51 to require that objections to the instructions be raised after the charge to the jury, in order to give the judge an opportunity to correct the error. *See, e.g., Castrignano v. E.R. Squibb & Sons, Inc.,* 900 F.2d 455, 460 (1st Cir.1990); *Smith v. Massachusetts Inst. of Tech.,* 877 F.2d 1106, 1109 (1st Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 406, 107 L.Ed.2d 372 (1989). The rule applies to special interrogatories as well as verbal instructions. *See Anderson v. Cryovac,* 862 F.2d 910, 918 (1st Cir.1988) ("[I]t is well settled that a litigant who accedes to the form of a special interrogatory will not be heard to complain after the fact.").

Here, defendant challenged the formulation of the questions when it was first shown the court's interrogatories. It did not, however, raise any objection to the jury instructions or special questions after the charge; nor did it object to the jury's answers as inconsistent after the verdict was read and before the jurors were dismissed. As we have repeatedly said, the use of special interrogatories puts the parties on notice that there might be an inconsistent verdict. *See Austin v. Lincoln Equip. Assoc., Inc.,* 888 F.2d 934, 939 (1st Cir.1990). "If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to their liking." *Anderson,* 862 F.2d at 918.

There is an exception to this rule for "plain error" but it applies only where the error results in a "clear miscarriage of justice" or seriously affects "the fairness, integrity or public reputation of judicial proceedings." *Smith,* 877 F.2d at 1110. This is not an appropriate case for application of the "plain error" exception to the rule. We hold that defendant waived any objection to the special interrogatories. *See McKinnon v. Skil Corp.,* 638 F.2d 270, 273 n. 2 (1st Cir.1981) (proper objection to jury instruction on application of comparative negligence principles to a breach of warranty claim not made at trial and appellate court saw no reason to apply plain error exception). Because of defendant's waiver, we do not consider the jury's answers to the special questions as evidence of its confusion on liability. "To decide otherwise would countenance 'agreeable acquiescence to perceivable error as a weapon of appellate advocacy.'" *Austin,* 888 F.2d at 939 (1st Cir.1989) (*quoting Merchant v. Ruhle,* 740 F.2d 86, 92 (1st Cir. 1984)).

## CONCLUSION

Absent any indicia other than the damages award, we hold that there is no basis for finding that the verdict was the result of a compromise on liability. We hold that the district court did not abuse its discretion in allowing plaintiff's motion for a new trial limited to the issue of damages.

AFFIRMED. Costs awarded to appellee.