Yvonne GIL DE REBOLLO,
Plaintiff—Appellant,

v.

The MIAMI HEAT ASSOCIATIONS,
INC., et al., Defendants—
Appellees.

Yvonne GIL DE REBOLLO,
Plaintiff—Appellee,

v.

The MIAMI HEAT ASSOCIATIONS,
INC., et al., Defendants—
Appellants.

Nos. 97–1361, 97–1622 and 97–1830.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1997.

Decided March 5, 1998.

---

58

Kevin G. Little, Jr., Fresno, CA, with whom David Efrón and Law Offices David Efrón, San Juan, PR, were on brief, for appellant.

Ricardo F. Casellas, with whom Rodríguez & Casellas, Hato Rey, PR, was on brief, for appellees.

Before LYNCH, Circuit Judge, CYR, Senior Circuit Judge, and DiCLERICO,* District Judge.

DiCLERICO, District Judge.

The plaintiff-appellant, Yvonne Gil Bonar de Rebollo, was injured by defendant-appellee, Wes Lockard, who portrays "Burnie," the mascot of co-defendant-appellee, Miami Heat Limited Partnership.[1] The plaintiff brought a tort action seeking damages. In the first trial, the jury awarded the plaintiff $10,000 but the trial court found that the verdict was most likely the result of bias or compromise and set it aside. After a second trial, the jury awarded the plaintiff $50,000. The district court also awarded the defendants costs which they incurred after an offer of judgment had been made and awarded costs to the plaintiff as a prevailing party. In this appeal, the plaintiff contends that she should have been granted a third trial because the $50,000 damage award was insufficient and the trial judge improperly excluded evidence. In their cross-appeal, the defen-

dants contend that (1) the district court erred in granting a second trial; (2) given the fact that the plaintiff ultimately received less than the amount the defendants had proposed in an offer of judgment, they are entitled to attorney's fees incurred after the offer; and (3) the trial court should not have awarded the plaintiff costs incurred after an offer of judgment. We agree with the district court's disposition of the case in all respects with the exception of its ruling awarding costs to the plaintiff incurred after an offer of judgment. Therefore, we affirm in part and reverse in part.

### Factual and Procedural Background [2]

On October 21, 1994, the plaintiff attended an exhibition basketball game between the Miami Heat and the Atlanta Hawks at the Roberto Clemente Coliseum. She was seated in the front row as part of a group that had received complementary tickets to the game. She had attended another exhibition game under similar circumstances the prior year.

During a time-out, defendant Lockard, dressed as Burnie, approached the plaintiff and grabbed her hand. He had selected her at random to participate in a routine he planned to perform as entertainment during the time-out. When he attempted to pull her onto the floor, she resisted and loudly told him no. He persisted, however, grabbing her left arm with both hands and pulling, because in his experience people often were reluctant at first but later changed their minds. Unbeknownst to either party, the plaintiff's purse strap had fallen over the back of her seat and was providing additional resistance to Lockard's efforts. He pulled the plaintiff with such force, however, that her purse strap broke and as a result she surged forward, falling to the floor. Lockard took the plaintiff's sudden movement as a

---

* Of the District of New Hampshire, sitting by designation.

1. Florida Basketball Associates, Inc. is also a defendant to the action. The record does not make clear the relationship between defendant Miami Heat Limited Partnership and defendant Florida Basketball Associates, Inc., but the parties have not distinguished between them on appeal. Therefore, the court refers to the Miami Heat Limited Partnership and Florida Basketball

Associates, Inc. throughout the remainder of this opinion, collectively as "the Heat."

2. Because the plaintiff has challenged the sufficiency of the damages awarded by the second jury, the court recounts the facts relevant to damages in the light most favorable to the verdict. *See Molloy v. Blanchard,* 115 F.3d 86, 88 (1st Cir.1997).

sign that she had changed her mind about participating and dragged her by the arm to the center of the court. When he saw that the plaintiff still did not wish to participate, he did not further coerce her. She stood up, composed herself, and walked off the court while he completed the routine alone. The plaintiff was extremely upset by the incident and left the game prior to its conclusion. She felt as though she had been humiliated in front of the entire crowd.

The plaintiff suffered both physically and emotionally as a result of the incident. She felt pain in her left arm and shoulder as well as pain to a lesser extent throughout her body. She also suffered a bruise on her left thigh. She did not, however, break any bones or suffer any neurological damage. After arriving at home, the plaintiff took pain medication and applied ointment to her body. A few days later, she consulted an orthopedist and a physiatrist in connection with her physical injuries. She undertook physical therapy which had been prescribed for her. Surgery was neither recommended nor undertaken.

The plaintiff has been diagnosed with post-traumatic tendonitis in her left shoulder, the primary symptom of which is pain. She continues to experience pain in her left arm and shoulder, which affects her when she engages in everyday activities. The plaintiff takes pain medication on a regular basis, and her condition is not expected to improve further. The plaintiff's condition has required her to modify her behavior in order to avoid tasks and activities that will exacerbate the pain, particularly heavy lifting and certain repetitive movements. However, she has a pre-existing condition in her back that also periodically causes her pain for which she had previously sought treatment. This pre-existing condition imposed similar restrictions on her ability to perform certain activities such as lifting heavy objects.

The plaintiff consulted with a psychiatrist for her emotional distress. She feels that the event has had a profoundly negative effect on her mental and emotional well-being, which she attributes in part to her traditional conservative upbringing. The plaintiff avoids large gatherings and feels that her privacy and dignity have been injured by the incident. She now takes anti-anxiety medications on a regular basis. The defendants' expert testified that the emotional difficulties experienced by the plaintiff were not permanent, but instead represented a normal reaction to an adverse situation. Experts for both parties agree that the plaintiff's condition does not rise to the level of a recognized psychological disorder. In addition to the distress caused by the incident, the plaintiff had pre-existing emotional stressors, including marital difficulty, that could account for some of her dysphoria.

Subsequent to the incident, the plaintiff brought criminal charges against Lockard. She felt the need to confront the people who she felt had wronged her. Lockard was found guilty of misdemeanor battery. The plaintiff also brought this civil action against both Lockard and the Heat, Lockard's employer. Her claim, brought pursuant to the court's diversity jurisdiction, alleged that Lockard had negligently injured her in violation of Puerto Rico law and that the Heat, as Lockard's employer, was responsible for that injury.

Prior to the civil trial, the trial court ruled that evidence of Lockard's criminal conviction would be unduly prejudicial and precluded the plaintiff from introducing it. On October 30, 1996, the plaintiff's case went to trial for the first time. After approximately one and one-half hours of deliberation, the jury returned a verdict in the amount of $100,000 in favor of the plaintiff, but it found only the Heat liable and not Lockard. The trial judge rejected the verdict because the plaintiff had pursued only a theory of respondeat superior liability against the Heat, and thus the Heat could not have been found liable unless Lockard was liable as well. The judge reinstructed the jury on the issue of liability and directed it to continue deliberating.

After another hour, the jury sent a note to the court requesting guidance on the amount of damages to which the plaintiff was entitled. The trial judge instructed the jury to review the instruction on damages the court had already given. The jury deliberated for approximately another hour and then returned a verdict that held both Lockard and

the Heat liable. However, the jury awarded the plaintiff only $10,000 in damages.

The plaintiff filed a motion for a new trial and for relief from judgment on November 14, 1996. On December 16, 1996, the district court ruled that the jury's verdict was most probably an impermissible verdict based on compromise or bias and granted a new trial. *See Gil de Rebollo v. Miami Heat Ltd. Partnership,* 949 F.Supp. 62, 64–65 (D.P.R.1996). The trial court reasoned that three possibilities explained the jury's reduction of the damage award to one-tenth the figure it had selected initially: (1) the jury may have rationally reconsidered its decision on damages when it was sent back to deliberate further; (2) the jury may have thought Lockard unaccountable for his interaction with the plaintiff but wanted to compensate her anyway from the corporate deep pocket, and when confronted with the requirements of respondeat superior, the jury lowered the amount of damages which Lockard might be required to pay, reflecting an improper compromise; or (3) the jury may have thought that the plaintiff had suffered $100,000 damages but tried to shield Lockard from having to pay because of an improper bias in his favor, and when it realized it could not shield Lockard, it lowered the amount of the verdict so that his liability would be minimized. *See id.* at 64. The court found that the latter two alternatives, both improper, were more likely than the first, which was proper, and granted a new trial. *See id.* at 65.

The second trial commenced on February 10, 1997. On February 14, 1997, the jury returned a verdict for the plaintiff in the amount of $50,000, finding that both Lockard and the Heat were liable. The plaintiff again filed a motion for a new trial, asserting that the damages were insufficient, but the trial court denied the motion.

During the course of the litigation, the parties made several attempts to settle their dispute without a trial. The plaintiff's initial demand in the case was for $1,000,000. On October 7, 1996, the defendants made a written offer of judgment under Federal Rule of Civil Procedure 68 ("Rule 68") to have judgment entered against them in the amount of $80,000. The plaintiff rejected the offer and countered with a demand of $600,000 and a public apology. The defendants rejected this proposal and the first trial began on October 30, 1996.

After the first trial, the defendants made a second offer of judgment on January 14, 1997, in the amount of $70,000. The plaintiff rejected the offer and countered with a demand of $250,000, which the defendants rejected. On January 23, 1997, the defendants made a third offer of judgment in the amount of $100,000. The plaintiff also rejected that offer, demanding $180,000. The $50,000 verdict obtained by the plaintiff in the second trial was less than all three offers of judgment.

After the second trial, the district court awarded the defendants $8,271.71 for costs incurred after the offer of judgment pursuant to Rule 68. It denied the defendants' request for attorney's fees under Puerto Rico Rule of Civil Procedure 44.1 ("Rule 44.1"), finding that the plaintiff had not conducted her case with temerity. The court awarded the plaintiff costs as a prevailing party under Federal Rule of Civil Procedure 54 in the amount of $7,894.84.

At the conclusion of this legal imbroglio, the plaintiff filed a timely appeal. The defendants have raised several issues on cross-appeal.

### Discussion

The parties raise the following issues on appeal: (1) the defendants claim that the trial court abused its discretion by setting aside the $10,000 verdict in the first trial and granting a new trial; (2) the plaintiff asserts that the jury's verdict of $50,000 damages in the second trial was insufficient and the trial court therefore abused its discretion by failing to grant her motion for a third trial; (3) the plaintiff claims that the trial court impermissibly excluded evidence of Lockard's criminal misdemeanor conviction; and (4) the defendants assert that the trial court erred in its award of costs and in its failure to award attorney's fees. We discuss these claims *seriatim.*

### I. Grant of the Second Trial ·

■ The trial court granted the plaintiff's motion for a second trial after it found that the jury possibly could have properly reconsidered the amount of damages to be awarded, but more likely had acted for an improper reason. The defendants argue that the trial court should have accepted the $10,000 verdict and erred by granting the plaintiff's motion for a new trial. The court, they urge, should not have endeavored to choose among the possible explanations for the jury's behavior. As long as there was a plausible explanation for the jury's conduct that was permissible, the defendants contend, the trial court should not have granted a new trial.

■ This argument is unpersuasive. *See Phav v. Trueblood, Inc.*, 915 F.2d 764, 766 (1st Cir.1990) (denial of new trial reviewed only for abuse of discretion). As the defendants acknowledge, First Circuit precedent distinguishes between cases where a jury's verdict is challenged as improper based only on a damage award that allegedly fails to bear any rational relation to the evidence of the damages presented at trial, *see, e.g., Correa v. Hospital San Francisco*, 69 F.3d 1184, 1197–98 (1st Cir.1995) (verdict alleged to be excessive), *cert. denied*, 517 U.S. 1136, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996); *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir.1988) (verdict alleged to be insufficient), and cases where there is some evidence of an improper verdict based on factors other than the amount of the damage award, *see, e.g., Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1446 (10th Cir.1988), *cited with approval in Phav*, 915 F.2d at 768; *Mekdeci ex rel. Mekdeci v. Merrell Nat'l Lab.*, 711 F.2d 1510, 1514 (11th Cir.1983) (same). Where the allegation of an improper verdict is based solely on the amount of the damage award, the circumstances under which a trial court may overturn a verdict are more limited. *See, e.g., Cigna Fire Underwriters Co. v. Macdonald & Johnson, Inc.*, 86 F.3d 1260, 1267 (1st Cir.1996) (grant of a new trial appropriate

where damages were easily calculable and damage award exceeded maximum value of damages claimed and did not take into account offset to damages);. *Torres–Troche v. Municipality of Yauco*, 873 F.2d 499, 501 & n. 6 (1st Cir.1989) (suggestion that allegedly low damage award indicated compromise verdict was speculation not meeting heavy burden of showing entitlement to · new trial). However, where evidence of an improper verdict exists other than the amount of the jury award, such as when a jury answers special questions in an inconsistent manner, the trial court's discretion to grant a new trial is broader. In such cases the court can consider all of the circumstances surrounding the jury's verdict, including the amount of the damage award, in determining whether or not the jury reached an improper verdict. *See Phav*, 915 F.2d at 768–69.[3]

The defendants acknowledge the distinction between cases where the only evidence of a compromise verdict is an allegedly insufficient damage award and cases where additional evidence indicates a compromise, but they attempt to cast this case as falling into the former rather than the latter category. However, in this case the trial court's determination did not turn solely on the amount of the verdict that the jury ultimately returned. Rather, the ten-fold reduction by the jury of its initial award of damages and the circumstances surrounding its determination of Lockard's liability provided the primary basis for the trial court's determination that the verdict as finally returned was motivated by compromise or sympathy. The verdict form ultimately completed by the jury was free of any internal inconsistency because it held Lockard and the Heat liable for $10,000 damages suffered by the plaintiff. However, the sequence of events preceding that verdict was properly considered by the trial court as an indication that the jury reached the verdict based on compromise or bias. *See id.* at 768 (odd chronology of jury deliberations one "telltale sign of a compromise verdict"). Therefore, the trial court had more latitude in this case in exercising its discretion to

---

**3.** Prior First Circuit cases, however, do not endorse the proposition propounded by the defendants that an inadequate damage award is an indispensable element of a compromise verdict.

*See Phav*, 915 F.2d at 768–69 (inadequate damages are potential evidence of compromise verdict, as are additional factors).

overturn the jury's verdict than it would have had in a case where the only basis for the grant of a new trial was the alleged insufficiency of a damage award. *See Mekdeci,* 711 F.2d at 1513, *cited with approval in Phav,* 915 F.2d at 768.

The trial court determined that the sequence of events leading up to the jury's final verdict in the first trial most likely indicated that the jury had reached its verdict improperly. The jury initially had assessed $100,000 in damages against the Heat but did not find Lockard liable. A short time after being told to deliberate further and requesting additional guidance the jury determined that Lockard was liable but reduced the amount of damages to $10,000. Based on the jury's behavior, it was logical for the trial court to conclude that the jury wanted to give the plaintiff something but it did not want to hold Lockard personally liable for a $100,000 award. There is no indication that the trial judge, who observed the trial, the timing of the questions, and the results of the deliberations, abused his discretion in arriving at this determination.[4] *See Phav,* 915 F.2d at 766. We therefore decline to overturn the trial court and to reinstate the initial $10,000 verdict.

## II. *Insufficiency of the Jury Verdict*

■■■ The plaintiff's main contention on appeal is that the trial court erred by failing to grant her motion for a new trial following the second verdict, on the grounds that the damage award of $50,000 is insufficient. As noted above, it is comparatively more difficult to justify overturning a jury's verdict where the only evidence that something has gone awry is an allegedly insufficient damages award. Indeed, the jury "is free to run the whole gamut of euphonious notes—to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between—so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand." *Milone,*

847 F.2d at 37. "At best, plaintiff's verdicts in personal injury cases are not models of mathematical exactitude. Thus, the fact that a particular award is a few dollars long or short would rarely (if ever) translate into a manifest miscarriage of justice." *Id.* at 41 n. 7. We view the evidence in the light most favorable to the jury's verdict, *see Molloy v. Blanchard,* 115 F.3d 86, 88 (1st Cir.1997), and will only overturn the jury's award and the trial judge's ensuing refusal to grant a new trial for abuse of discretion, *see Correa,* 69 F.3d at 1197.

■■■ The record demonstrates that most of the damages suffered by the plaintiff were intangible. "An appellate court's normal disinclination to second-guess a jury's evaluation of the proper amount of damages is magnified where, as here, the damages entail a monetary valuation of intangible losses, and the trial judge, having seen and heard the witnesses at first hand, accepts the jury's appraisal." *Id.* Even accepting the plaintiff's complaints uncritically, which the jury was not required to do, her primary claims for damages are that (1) she suffers from pain; (2) the quality of her life has been reduced because of her pain and because of the measures she must take to avoid pain; and (3) her dignity, self-image, and sense of well-being have been adversely affected by the incident.

In addition to the intangible nature of the plaintiff's injuries, the evidence in this case permitted the jury to find that her injuries were not as severe as she claimed. The jury could also have found that most of the plaintiff's physical pain was caused not by the incident in question but by the plaintiff's failure to obey her doctor's orders not to move heavy objects, which orders were given in connection with her pre-existing back injury. The jury was free to disbelieve as much of the plaintiff's expert and lay testimony as it wished. In short, the plaintiff has provided no support for the proposition that the jury's $50,000 verdict was so far beyond the range of acceptable verdicts, based on the evidence presented at trial, that it constitut-

---

4. In reaching this decision we intend no comment on the sufficiency of the $10,000 damage award.

ed a manifest miscarriage of justice. The district court did not abuse its discretion by denying her motion for a new trial.

### III. Failure to Admit Evidence of Lockard's Conviction

The trial court ruled that evidence of Lockard's criminal misdemeanor conviction was inadmissible because its prejudicial effect substantially outweighed its probative value. *See* Fed.R.Evid. 403. The plaintiff asserts that this ruling was error. We review the district court's determination that the evidence of Lockard's conviction should have been excluded for abuse of discretion. *See Kowalski v. Gagne,* 914 F.2d 299, 306 (1st Cir.1990).

The plaintiff places undue reliance on *Kowalski,* a case which stands for the proposition that the district court has discretion to admit evidence such as this. *See id.* However, *Kowalski* does not support the notion that the district court abused its discretion in this case by failing to admit this evidence. Indeed, as *Kowalski* makes clear, the district court's decision that the evidence was substantially more prejudicial than probative was well within its discretion. *See id.*

Here, the jurors were presented with sufficient evidence to gauge the seriousness of Lockard's actions and their effect on the plaintiff. In addition to the testimony of the plaintiff and other witnesses, the episode was recorded by a television camera and the tape was made available for the jury to watch. The parties stipulated that Lockard was portraying the mascot Burnie throughout the incident. The jury did not need evidence of Lockard's criminal conviction to assess his role in the incident. Under the circumstances, admission of Lockard's criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own.

Furthermore, even assuming *arguendo* that the exclusion of the evidence was error, the error had no effect on the outcome of the case. The only issue on which Lockard's conviction was probative was the issue of his liability for the plaintiff's injury. Both juries found Lockard liable for the plaintiff's injuries. Lockard's conviction had relevance neither to the issue of the plaintiff's injuries nor to the amount of damages necessary to compensate her for those injuries.

The plaintiff's reliance on *Kowalski* for the proposition that a criminal conviction is, as a matter of course, relevant to the issue of damages in an ensuing civil trial is also misplaced. *Kowalski* dealt with a Massachusetts wrongful death statute which provides that damages should be "assessed with reference to the degree of [the defendant's] culpability." 914 F.2d at 306. For that reason, the defendant's conviction of the crime of second degree murder was relevant to the issue of culpability, and thus the issue of damages. *See id.* The plaintiff's cause of action here was for negligence and she was entitled only to compensatory damages. For these reasons, the district court did not abuse its discretion by failing to admit evidence of Lockard's conviction, and the plaintiff is not entitled to a new trial.

### IV. The Award of Costs & Failure to Award Attorney's Fees

The trial court awarded the defendants costs incurred after their first offer of judgment but declined to award the defendants their attorney's fees. It found that the plaintiff had not been obstinate at any point in the proceedings. In addition, it awarded the plaintiff costs as a prevailing party. The defendants contend that (1) the district court erred by failing to award attorney's fees incurred after the offer of judgment; (2) the court erred in finding that the plaintiff was not obstinate under Rule 44.1; and (3) the court erred when it awarded the plaintiff costs incurred after their offer of judgment. We discuss these claims *seriatim.*

#### A. Attorney's Fees Incurred After the Offer of Judgment

The trial court declined the defendants' request that they be awarded attorney's fees that were incurred after their offer of judgment. The defendants assert that it was error to do so. Resolution of this issue requires that we carefully analyze the relationship between two rules of civil procedure, Federal Rule 68 and Puerto Rico Rule 35.1,

both of which ostensibly govern the situation at hand.

 In *Erie Railroad Co. v. Tompkins,* the United States Supreme Court set forth the general doctrine by which federal courts in diversity cases determine whether state or federal law will apply to a controversy. *See* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Hanna v. Plumer,* the Supreme Court set forth the test for determining how a court should choose between a federal procedural rule and a conflicting state substantive rule. *See* 380 U.S. 460, 471, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965). Where a Federal Rule is "sufficiently broad to control the issue" but conflicts with a state law, the court applies the Federal Rule unless it transgresses the limits of the Rules Enabling Act, 28 U.S.C. § 2072, or the Constitution. *Id.* at 471–72, 85 S.Ct. at 1143–45; *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29–31, 108 S.Ct. 2239, 2243–45, 101 L.Ed.2d 22 (1988).[5] In most cases where a conflict exists, the Federal Rule will be applied because the Federal Rules are presumptively valid. *See Burlington N. R.R. v. Woods,* 480 U.S. 1, 5, 107 S.Ct. 967, 969–70, 94 L.Ed.2d 1 (1987); 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 124.03[1] (3d ed.1997).

Rule 35.1 of the Puerto Rico Rules of Civil Procedure ("Rule 35.1") addresses offers of judgment. It provides, in pertinent part, as follows:

At least ten (10) days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... If [the offer is rejected and] the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs, expenses and attorney's fees incurred after the making of the offer.

P.R. Laws Ann. tit. 32, App. III, Rule 35.1 (1983). The Supreme Court of Puerto Rico has held that this rule applies not only when the plaintiff/offeree prevails at trial and attains a verdict that is less than the offer of judgment but also when the plaintiff/offeree loses the suit in its entirety. *See Ganapolsky v. Keltron Corp.,* 823 F.2d 700, 701 (1st Cir.1987) (citing *Hermandad Unida De Carpinteros Y Ebanistas De America v. V. & E. Eng'g Constr. Co.,* 115 D.P.R. 711, 1984 WL 270891 (1984)).

 Rule 68 provides, in pertinent part, as follows:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.... If [the offer is rejected and] the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay

---

5. Since the *Hanna* decision, the Supreme Court has clarified the focus of the inquiry for determining whether a state law and a Federal Rule conflict. Early cases indicated the necessity for a "direct collision." *See, e.g., Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–51, 100 S.Ct. 1978, 1984–86, 64 L.Ed.2d 659 (1980); *Hanna,* 380 U.S. at 472, 85 S.Ct. at 1144–45. Subsequent cases make clear, however, that the "direct collision" analysis does not involve the narrowest possible reading of the relevant Federal Rule. *See Stewart,* 487 U.S. at 26–27 n. 4, 108 S.Ct. at 2242 n. 4; *Walker,* 446 U.S. at 750 & n. 9, 100 S.Ct. at 1985 & n. 9. In *Stewart,* the Supreme Court stated the following:

Our cases at times have referred to the question at this stage of the analysis as an inquiry into whether there is a "direct collision" between state and federal law. Logic indicates, however, and a careful reading of the relevant

passages confirms, that this language is not meant to mandate that federal law and state law be perfectly coextensive and equally applicable to the issue at hand; rather, the "direct collision" language, at least where the applicability of a federal statute is at issue, expresses the requirement that the federal statute be sufficiently broad to cover the point in dispute. It would make no sense for the supremacy of federal law to wane precisely because there is no state law directly on point.

487 U.S. at 26–27 n. 4, 108 S.Ct. at 2242 n. 4 (citations omitted). Subsequent First Circuit cases confirm that the relevant inquiry for evaluating a potential conflict is whether the Federal Rule is "sufficiently broad to control the issue." *See Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 41 F.3d 764, 772 (1st Cir.1994); *Daigle v. Maine Med. Ctr., Inc.,* 14 F.3d 684, 689 (1st Cir.1994).

the costs incurred after the making of the offer.

Fed.R.Civ.P. 68. Rule 68 does not itself supply a definition of "costs." Instead, it incorporates the definition of "costs" found in the relevant substantive statute of the jurisdiction whose substantive law applies to the case. Therefore, when the definition of "costs" in the relevant substantive statute includes attorney's fees, attorney's fees incurred after the offer of judgment must be paid by the offeree. *See Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012, 3016–17, 87 L.Ed.2d 1 (1985). In addition, Rule 68 applies only when a plaintiff/offeree obtains an award that is less than the offer of judgment, and not when the plaintiff/offeree loses the suit in its entirety. *See Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981); *Ganapolsky*, 823 F.2d at 701–02.

■ Rule 68 would not allow the defendants to recover attorney's fees in this case unless the underlying substantive law defines attorney's fees as a part of costs. *See Marek*, 473 U.S. at 9, 105 S.Ct. at 3016–17. The substantive law underlying this action is Puerto Rico's law of negligence. *See* P.R. Laws Ann. tit. 31, § 5141 ("A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."). Puerto Rico law makes no provision for the award of attorney's fees as any part of "costs" in such cases. *Compare* Rule 44.1(a) ("Costs shall be allowed to the prevailing party, except when otherwise directed by law or by these rules. The costs which may be allowed by the court are those expenses necessarily incurred in prosecuting an action or proceeding which, according to law or to the discretion of

the court, one of the parties should reimburse to the other."), *with* Rule 44.1(d) ("In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.").

The only other source of Puerto Rico law that might supply a definition of costs that includes attorney's fees is Rule 35.1 itself.[6] However, Rule 35.1 allows for the award of "costs, expenses and attorney's fees." P.R. Laws Ann. tit. 32, App. III, Rule 35.1 (1983). On its face, the rule treats costs and attorney's fees as separate items; it does not define attorney's fees as part of costs. *See id.; see also, e.g., Knight v. Snap–On Tools Corp.*, 3 F.3d 1398, 1405 (10th Cir.1993) ("[T]he fee-shifting provision clearly identifies attorney's fees separately from costs."); *Oates v. Oates*, 866 F.2d 203, 206–07 (6th Cir.1989). Therefore, the "costs" to which the defendants would be entitled under Rule 68 are those detailed in 28 U.S.C. § 1920, which do not include attorney's fees.

■ Rule 35.1 and Rule 68 both ostensibly apply to this case and would result in a different award.[7] The two rules are in "direct collision" despite the fact that they are not "perfectly coextensive" because Rule 68 is "sufficiently broad to cover the point in dispute." *See Stewart*, 487 U.S. at 26–27 n. 4, 108 S.Ct. at 2242 n. 4; *Burlington*, 480 U.S. at 4–5, 107 S.Ct. at 969–70. *Compare Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167–68 (9th Cir.1995) (Rule 68 and federal law on expert witness fee compensation controlled despite similar California offer of judgment law and conflicting California expert witness law), *with S.A. Healy Co. v.*

---

6. We accept, *arguendo*, the proposition that the Puerto Rico Rules of Civil Procedure may supply substantive legal standards in some circumstances. *See Ganapolsky*, 823 F.2d at 702 (Rule 35.1); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir.1979) (earlier enactment of current Rule 44.1); *Pan Am. World Airways v. Ramos*, 357 F.2d 341, 342 (1st Cir.1966) (earlier enactment of current Rule 44.1).

7. The defendants urge, based on our decision in *Ganapolsky*, that the district court should have applied Rule 35.1 to award them attorney's fees. *See* 823 F.2d at 702. *Ganapolsky*, however, did

not involve an actual conflict between Rule 68 and Rule 35.1. The defendant in *Ganapolsky* prevailed because the plaintiff's case was dismissed as a sanction. *See id.* at 701. Therefore, Rule 68 did not apply. *See Delta Air Lines*, 450 U.S. at 352, 101 S.Ct. at 1150; *Ganapolsky*, 823 F.2d at 701–02. Rule 35.1, on the other hand, did apply. *See id.* at 701 (citing *Hermandad*). This case differs from *Ganapolsky*, because here the plaintiff received a verdict less favorable than the defendants' offer of judgment and thus Rule 68 applies.

*Milwaukee Metro. Sewerage Dist.,* 60 F.3d 305, 310 (7th Cir.1995) (Rule 68 not in direct conflict with Wisconsin statute governing rejected settlement offers by plaintiffs), *and Tanker Mgm't, Inc. v. Brunson,* 918 F.2d 1524, 1528 (11th Cir.1990) (Rule 68 not in "direct collision" with Florida statute governing attorney's fees, offers of judgment, and settlement offers). The parties have not suggested and the court cannot discern any infirmity in Rule 68 sufficient to defeat the presumption of validity and constitutionality mandated by *Burlington Northern Railroad,* 480 U.S. at 5, 107 S.Ct. at 969–70. *See S.A. Healy Co.,* 60 F.3d at 312 ("[T]here cannot be any doubt that Rule 68 is within the scope of the Rules Enabling Act."). Therefore, Rule 68, rather than Rule 35.1, applies in this case and the defendants are entitled only to costs. The district court did not err in refusing to award the defendants their attorney's fees as part of costs.

## B. Obstinacy

The district court found that the plaintiff was not obstinate under Rule 44.1(d) and declined to award attorney's fees.[8] A finding of obstinacy is reviewed for abuse of discretion. *See De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 126–27 (1st Cir.1991). The defendants urge that the plaintiff's conduct was obstinate because she refused to accept multiple offers of judgment which they assert were reasonable.[9] The fact that the plaintiff was eventually awarded less than the amount of the offers, the defendants contend, is evidence of their reasonableness. The defendants ask that we adopt a rule that failure to accept an offer of judgment, when the verdict at trial turns out to be less than the offer, be considered obstinate *per se.*

The presumption requested by the defendants lacks support in Puerto Rico law, and we decline to adopt it. The district court

judge, who observed the proceedings as they unfolded, made a finding that the plaintiff was not obstinate. Because we find no evidence that the trial judge abused his discretion in that determination, we decline to overturn the district court on this issue.

## C. Plaintiff's Expert Fees Incurred After the Offer of Judgment

The defendants finally contend that the court erred by awarding the plaintiff expert fees incurred after the offer of judgment. Such an award expressly contravenes the terms of Rule 68, which provides that, if an offer of judgment is rejected and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. The district court erred in making this award. Although the plaintiff did not distinguish between costs incurred pre- and post-offer, the defendants have only contested the award of $3,950 paid for the testimony of two experts at the two trials. Because such amounts were clearly incurred after the offer of judgment and the defendants have not challenged the other components of the trial court's initial award of costs, we reduce the plaintiff's award of costs by that amount.

## Conclusion

To conclude, we find the parties' remaining arguments and claimed errors to be without merit and unworthy of extended discussion. For the reasons stated above, the judgment of the district court is ***affirmed*** as to the grant of the second trial, the exclusion of evidence of Lockard's conviction, the refusal to grant a third trial, and the refusal to grant attorney's fees as part of costs incurred after the first offer of judgment. The district court's award to the plaintiff of costs incurred after the offer of judgment in the amount of $3,950 is ***reversed,*** and the plain-

---

8. Rule 44.1(d) provides that:
 In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct.
 P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d) (Supp.1992).

9. The defendants argue that the plaintiff was obstinate under the standards of either Rule 44.1 or Rule 35.1. However, because we have determined that Rule 35.1 does not apply in this case, *see* section IV.A *supra,* we consider here only the defendants' argument with respect to Rule 44.1.

tiff's award of costs shall be reduced by that amount. Because the plaintiff's appeal was wholly without merit, costs of the appeal are awarded to the defendants.