Eckel Indus. v. Primary Bank          CV-95-459-SD   10/15/98
                UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEW HAMPSHIRE

Eckel Industries, Inc.

        v.                              Civil No. 95-459-SD

Primary Bank;
Robert E. Sager, individually


                          O R D E R


     Following jury trial, this matter is before the court for

resolution of the issues raised by certain post-trial motions.


1.  Background

     Plaintiff Eckel Industries, Inc., is a company which

designs, manufactures, and sells impact traffic doors.[1]  In 1991

James Collins, then a vice president at Eckel, decided to form a

new company to compete with Eckel in the impact door market.

     Collins' new venture, eventually incorporated under the name

Antco, initially sought financing from First NH Bank (First NH).

Unsatisfied with the pace of loan approval at First NH, Collins

sought financing from Peterborough Savings Bank, the predecessor

_____

        [1]Impact traffic doors are doors that permit vehicles such
as loaded forklifts to regularly pass through the door, which
opens automatically before and closes automatically behind the
forklift.

of defendant Primary Bank.  Defendant Robert E. Sager was the loan officer who supervised the awarding of a $135,000 loan to Antco from Peterborough Savings Bank.

Although Collins had no non-compete agreement with Eckel, the latter launched a series of litigations against various parties and entities who sought to do business with Collins and/or Antco.  As a result, exclusive of this litigation, Eckel received from settlements total sums of $543,662.16.

Antco failed, and Primary sold such Antco assets as it could find to the Superior Door Company.  Eckel brought the instant suit against Primary and Sager for misappropriation of its trade secrets.[2]  The jury returned a verdict for Eckel in the amount of $142,000.[3]

---

[2]Although Eckel originally raised other theories, the court ruled that Eckel's right of recovery must be determined pursuant to the New Hampshire version of the Uniform Trade Secrets Act (UTSA), which is found in New Hampshire Revised Statutes Annotated (RSA) chapter 350-B.

[3]The jury returned a verdict of $142,000 against Primary and a verdict of the same amount against Sager.  As Primary's liability is grounded on respondeat superior, the court finds it would be duplicative and equate with double damages to permit a total award of more than $142,000.

## 2. Motion for New Trial, document 75

This motion, to which defendants object, document 79,[4] seeks a new trial on the issue of damages only. Alternatively, plaintiffs seek the remedy of additur.[5]

Pursuant to Rule 59(a), Fed. R. Civ. P., a new trial may be granted "to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." However, new trials are "warranted only if the verdict, though rationally based on the evidence, was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." Bogosian v. Mercedes-Benz of N.A., Inc., 104 F.3d 472, 482 (1st Cir. 1997) (internal quotations and citations omitted).

---

[4]Surprisingly, defendants' objection is grounded on the perceived untimeliness of the motion, i.e., on an argument that the motion cannot be filed before actual entry of judgment. This argument is incorrect, for Rule 59(e), Fed. R. Civ. P., does not require the existence of a pre-existing judgment, but only that the motion be served "not later than 10 days after entry of judgment." Accordingly, most courts hold that the motion may be made before judgment has actually been entered. 12 Moore's Federal Practice § 59.11[1][b], at 59-33 (3d ed. Matthew Bender 1997).

[5]Although the remedy of additur is recognized in the state courts, Belanger v. Teague, 126 N.H. 110, 111, 490 A.2d 772 (1985), federal courts are barred from its utilization, as the Supreme Court has held additur to be violative of the Seventh Amendment. Dimick v. Schiedt, 293 U.S. 474, 486-87 (1935).

Moreover, it is well settled in the First Circuit that where, as here, the allegation of an improper verdict is based solely on the amount of the damage award, the circumstances under which a trial court may overturn a verdict are strictly limited. Gil de Rebollo v. Miami Heat Assocs., Inc., 137 F.3d 56, 62 (1st Cir. 1998). The evidence must be viewed in the light most favorable to the jury's verdict, Molloy v. Blanchard, 115 F.3d 86, 88 (1st Cir. 1997), with consideration given to the jury's right "to disbelieve as much of the plaintiff's expert and lay testimony as it wished." Gil de Rebollo, supra, at 63.

Thus viewed, the jury's award of $142,000 is, the court finds, neither the result of a compromise nor so niggardly as to require the order of a new trial. This case concerned the alleged misappropriation by defendants of certain financial information of plaintiff in the course of awarding a loan in the amount of $135,000 to a fledgling company which failed less then a year after entry into competition with plaintiff.

The jury could rationally find that the plaintiff's claimed losses of $1,180,000 would not reasonably and completely flow from such circumstances, and the jury could find that a reasonable award more likely should approximate the funds utilized to launch the competitor.

4

In cases which involve only economic loss, review must proceed with great deference to the jury's award. <u>Segal v. Gilbert Color Systems, Inc.</u>, 746 F.2d 78, 81 (1st Cir. 1984). The jury "'is free to run the whole gamut of euphonious notes--to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between-- so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the verdict permitted to stand.'" <u>Gil de Rebollo</u>, <u>supra</u>, 137 F.3d at 63 (quoting <u>Milone v. Moceri Family, Inc.</u>, 847 F.2d 35, 37 (1st Cir. 1998)).

There is, the court finds, no manifest miscarriage of justice in the verdict here returned. Accordingly, the motion for new trial is denied.

3. __Motion for Imposition of Exemplary Damages and Attorney's__

__Fees, document 69__[6]

The UTSA, RSA 350-B:3[7] provides that the court may double

damages awarded by the jury "[i]f willful and malicious

misappropriation exists."  And RSA 350-B:4, III,[8] permits an

award of attorney's fees in the same circumstances.  Accordingly,

plaintiff moves for both exemplary damages and attorney's fees,

and the defendants object.  Document 77.[9]

To prove its claim of willfulness, plaintiff relies on

excerpted testimony at trial from Christopher Flynn, president of

Primary.  The court has reviewed this testimony and finds it

unsupportive of plaintiff's argument.  Fairly read, a rational

juror could find that the testimony describes a chance meeting

---

[6]With respect to both exemplary damages and attorney's fees, UTSA follows federal patent law in leaving the awards of such, if any, to the discretion of the court, even though there may be a jury.  14 UNIFORM LAWS ANNOTATED at 457, 460 (Master Ed. West 1990).

[7]RSA 350-B:3, II, provides, "If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under paragraph I."

[8]RSA 350-B:4 provides that "[t]he court may award reasonable attorney's fees to the prevailing party when . . . [w]illful and malicious misappropriation exists."

[9]For the first time, defendants suggest that they were surprised and deprived of adequate opportunity to prepare a defense when the court ruled that the case would be decided pursuant to UTSA, RSA 350-B.  However, defendants did not move for a continuance or otherwise seek the opportunity to further investigate and defend against such claims.

between Collins and Flynn at a school sporting event, where Collins showed Flynn a letter from Collins's attorneys. This letter, which Flynn returned to Collins, the jury could find described only the steps being taken for the approval of financing by First NH. The letter, the jury could further find, was not the letter entered into evidence as Plaintiff's Exhibit 18, which letter described the claims of Eckel concerning Antco.

The court further finds that under the circumstance of this case plaintiff misplaces reliance on the rulings in Mangren Research & Dev. Corp. v. National Chem. Co., 87 F.3d 937, 946 (7th Cir. 1996), and Boeing Co. v. Sierracin Corp., 108 Wash. 2d 38, 61, 62, 738 P.2d 665, 680-81 (1987). The egregious acts of defendants detailed in those cases far exceed any acts or omissions of the defendants in the instant case.

More to the point is the decision in Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1120-21 (Fed. Cir. 1996), wherein the court, looking properly to underlying state law, describes requirements of "willful and malicious" as to both punitive damages and attorney fees.

While it is true that, as plaintiff points out, the New Hampshire courts have not specifically ruled on the meaning of "willful and malicious" under RSA 350-B:3, 4, they have decided similar terms in outlining the requirement for "exemplary

7

damages" under New Hampshire law.  That requirement is that the record demonstrate "'ill will, hatred, hostility, or evil motive on the part of the defendant.'"  <u>Aubert v. Aubert</u>, 129 N.H. 422, 431, 529 A.2d 909 (1987) (citing and quoting <u>Munson v. Raudonis</u>, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978)).

The court finds that the New Hampshire courts would adhere to such requirement in any interpretation of RSA 350-B:3, 4.  As the evidence in this case does not support such requirement, it follows that the plaintiff's motion for exemplary damages and attorney's fees must be and it is herewith denied.


<u>4.  Motion to Limit Setoffs to Jury Award, document 76</u>

As indicated earlier in the body of this order, the plaintiff sued a number of individuals and other entities in the wake of the departure of Collins.  These varied cases were disposed of by compromise settlement, and in total plaintiff received the sum of $543,662.16.

Plaintiff suggests, however, that because the causes of action differ among the various defendants, any offset must be limited to $25,000.  The defendants objects.  Document 78.  The issues are governed by the provisions of RSA 507:7-h, 7-i.[10]

---

[10]RSA 507:7-h provides that, while a release "does not discharge any other person liable upon the same claim unless its terms expressly so provide. . . .  [I]t reduces the claim of the

8

The New Hampshire courts have not as yet ruled on the meanings of RSA 507:7-h, 7-i, but the court finds that in so doing they would adopt the view of the RESTATEMENT OF TORTS. Judicially described as the "modern," Villarini-Garcia v. Hospital del Maestre, 112 F.3d 5, 7 (1st Cir. 1997), or "one satisfaction," Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989), cert. denied, 493 U.S. 1024 (1990), rule, that view is set forth in section 885(3) of the RESTATEMENT OF TORTS (SECOND), as follows:

> A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

And comment f to section 885(3) provides:

> Payments made by one who is not himself liable as a joint tortfeasor will go to diminish the claim of the injured person against others responsible for the same harm if they are made in compensation of that claim, as distinguished from payments for collateral sources such as insurance, sick benefits, donated medical or nursing

---

releasing person against other persons by the amount of the consideration paid for the release."

RSA 507:7-i forbids the introduction at trial of any settlement had with a codefendant, but provides that "upon return of a verdict for the plaintiff by the jury in any such trial, the court shall inquire of counsel the amount of consideration paid for any such settlement . . . and shall reduce the plaintiff's verdict by that amount."

9

services, voluntary continuance of wages by an employer, and the like. These payments are commonly made by one who fears that he may be held liable as a tortfeasor and who turns out not to be. Less frequently they are made by a stranger, who wishes to compensate the plaintiff or to protect one tortfeasor against a possible judgment. The older rule was that the payments did not diminish the claim, which in effect allowed double compensation to the plaintiff <u>on the basis of inconsistent positions taken toward different persons</u>. This has now generally given way to the rule stated, that the claim is diminished if compensation was intended. This is consistent with the general holding as to accord and satisfaction of contracts. . . . (Emphasis added.)

Fortified with a massive affidavit from Attorney Bland, one of its counsel, Eckel here seeks to allocate its other settlements in such fashion as to claim that only a small portion of one settlement should be offset against its recovery in this case. Not only should such allocations by counsel be viewed with suspicion, <u>Forse v. Division, OWCP Dept. of Labor</u>, 938 F.2d 981, 986 (9th Cir. 1991), but in light of what the court here holds to be the proper rule of law to be applied, they must be rejected.

It follows that the plaintiff's motion to limit setoffs must be denied, and that the total settlements of $543,662.16 are to be set off against the verdict of $142,000. This means that plaintiff takes nothing in this action but its costs.

10

## 5. Conclusion

For the reasons outlined, the court has denied plaintiff's motions for new trial (document 75), for imposition of exemplary damages and attorney's fees (document 60), and for limitation of setoffs (document 76). Plaintiff is entitled to recover its costs.

Judgment is to be entered accordingly, and the case is to be closed.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 15, 1998

cc:  John J. Kuzinevich, Esq.
     Francis G. Holland, Esq.
     Silas Little III, Esq.

11